IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(ALEXANDRIA DIVISION)

| | | |
|---|---|---|
| GLOBAL POLICY PARTNERS, LLC | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KATHERINE FRIESS YESSIN | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Case No. 1:09CV859 |
| | ) | |
| BRENT YESSIN | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DOE DEFENDANTS 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT  BRENT YESSIN'S MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION TO STAY PROCEEDINGS

## I.      INTRODUCTION

This case arises out of the ongoing divorce proceedings of Mrs. Katherine Freiss Yessin ("Mrs. Yessin" or "Plaintiff") and her husband, Mr. Brent Yessin ("Mr. Yessin" or "Defendant").  At bottom, this case is about Mr. Yessin's alleged "surveillance" of his wife's emails.  Plaintiffs do not allege facts showing actual harm or damage caused by Mr. Yessin's actions.  They do not allege that the Mr. Yessin destroyed or altered data, or that he caused a disruption of Global Policy Partners, LLC's operations or computer network.  Just Mr. Yessin looked at his wife's emails – nothing more.  Not content with raising this issue before the Florida court handling her divorce, Mrs. Yessin, with a

battery of lawyers, trumps up multiple federal and state law claims for alleged computer fraud and then goes public with her scurrilous charges in news accounts carried by the Washington Legal Times, among others, to gain advantage in the divorce proceedings.

Even worse than unnecessarily airing her disagreements with Mr. Yessin in public and in a federal forum, Mrs. Yessin drags Global Policy Partners, LLC ("GPP") into the fray, and in so doing, conveniently omits any reference in her Complaint to the fact that Mr. Yessin is GPP's manager; Mr. Yessin provided all of the operating funding for the Company; Mr. Yessin loaned the Company $150,000 to the keep the Company afloat; and as GPP's manager, he was fully authorized to access all of GPP's computers, networks and data.

Indeed, when this suit was filed, the Annual Report on file for GPP with the Florida Department of State, Division of Corporations (the "Florida Department of State") listed Mr. Yessin as the sole manager of the Company.  Exh. 1.  After the case was filed, but before serving the Complaint on Mr. Yessin, Mrs. Yessin unilaterally and without authority filed an Annual Report with the Florida Department of State adding herself and Jeffrey Weiss as managers of the Company, in addition to Mr. Yessin.  Exh. 2.  Mrs. Yessin's unauthorized acts has caused Mr. Yessin to file a declaratory judgment action in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, State of Florida, Civil Division, Case No. 09-21512, seeking a declaration that he is the sole, authorized manager of the Company (the "Florida Declaratory Judgment Action").  Exh. 3.

This Court need not accept Mrs. Yessin's conclusory allegation that Mr. Yessin has no decision making authority over GPP, because it runs directly contrary to public

documents on file with the Florida Department of State.  Since the formation of GPP, Mr.
Yessin has been listed as a manager in the company's annual reports.  *See* Exh. 4.
Further, Mr. Yessin is listed as a managing member in the company's initial Articles of
Organization.  Exh. 5.  Because Mr. Yessin retains management authority, he is
authorized by Florida law to access and utilize the property of GPP.  Given that an
essential element to Plaintiffs' Complaint in Counts I, II, VI, VII, XII, XIII, and XIV is a
lack of authority to access the computer networks of the company, and the fact that Mr.
Yessin maintains such authority, Plaintiffs have failed to state a claim upon which relief
may be granted.

Plaintiffs claims in Counts III, IV, V, VIII, IX, X and XI must also be dismissed,
because Plaintiffs have failed to allege Mr Yessin "intercepted" their electronic
communications during transmission, a fact that must be pled to qualify for relief under
the Federal and State Wiretap Acts.  Instead, Plaintiffs only allege that Mr. Yessin
accessed GPP's computer network ***after*** the electronic communications were stored in
GPP's computer network.  Obviously, accessing stored information on a computer a party
has authority to access is not "interception."  Thus, Plaintiffs' have failed to allege facts
sufficient to support their relevant allegations.

Additionally, the Plaintiffs' trespass to chattels claim fails both, because Mr.
Yessin had authority to access GPP property, and because Plaintiffs do not allege damage
*to the chattels*, an essential element of the tort.  Because Plaintiffs do not rebut the clear
evidence of Mr. Yessin's authority and only allege damage to themselves, personally,
they have failed state facts sufficient to support a claim for trespass to chattels upon
which relief may be granted.

Finally, as shown above, Mrs. Yessin has no authority to unilaterally act to bring this suit in the name of GPP against one its managers.  Mrs. Yessin has not alleged, nor can she, that the board of managers met and approved the bringing of this suit against Mr. Yessin.  Thus, GPP's claims must be dismissed because Mrs. Yessin lacks authority to bring this action in the name of GPP and commit waste by expending funds on behalf of the company for no apparent benefit to the company.  Moreover, to the extent that this Court believes that resolution of the issues in this motion cannot be decided until it is determined who GPP's managers are and what authority Mrs. Yessin has to bring this action in the name of the GPP, this Court should stay this action pending resolution of the Florida Declaratory Judgment Action.

## II.   STATEMENT OF ALLEGED FACTS

The following allegations are taken from the Plaintiffs' Complaint.  GPP is Florida Limited Liability Company whose members consist of Mr. Yessin, Mrs. Yessin and Mr. Jeffery C. Weiss ("Mr. Weiss").  Compl. ¶¶ 5, 9, 12.  Plaintiffs allege that Mrs. Yessin and Mr. Weiss are the only officers and principals of GPP, although neither title has been granted to them under the authority of the Florida Limited Liability Company Act, *Id.* at ¶ 9, 12, much less are their titles found in any document on file with the Florida Department of State.  Plaintiffs also allege that Mrs. Yessin and Mr. Weiss possess the only authority to make decisions on behalf of GPP, despite the corporate documents indicating to the contrary.  *Id.* at ¶ 12.

Plaintiffs allege that Mrs. Yessin uses a GPP supplied laptop computer in her home in Arlington, Virginia.  *Id.* at ¶ 13.  Mrs. Yessin uses this laptop to access the GPP computer system and network, through which she sends and receives e-mail

4

correspondence. *Id.* at ¶ 13. Mrs. Yessin and Mr. Yessin are currently in divorce proceedings in the State of Florida, and Mrs. Yessin allegedly communicates with her divorce counsel via the GPP computer system. *Id.* at ¶¶ 13, 15.

Plaintiffs allege that Mr. Yessin accessed the GPP computer network and "surveilled" various communications between Mrs. Yessin and her divorce counsel. *Id.* at ¶¶ 16-17. Plaintiffs further allege that Mrs. Yessin became aware of her husband's alleged surveillance of these communications on July 1, 2009, when he used certain "buzz words" that she had shared only with her divorce counsel. *Id.* at ¶ 20. In response, Mrs. Yessin changed the password to her GPP e-mail account. *Id.* at ¶ 18. On July 22, 2009, Mrs. Yessin's counsel sent Mr. Yessin a letter demanding he discontinue his access of the GPP computer system. *Id.* at ¶ 21. Plaintiff's allege that Mr. Yessin provided an immediate written response refusing to comply with the demand letter, although no such response has been attached to the Complaint. Compl. ¶ 21.

Plaintiffs state that they have knowledge of Mr. Yessin's continued access to the GPP computer system, although they fail to state the basis of this allegation. *Id.* at ¶ 22. Finally, Plaintiffs' allege that Mr Yessin's continuing use of the GPP computer system, despite his position as manager, has caused harm to both Mrs. Yessin and GPP. *Id.* at ¶¶ 2-151.

### III.    MOTION TO DISMISS STANDARD

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (citations omitted).  Instead, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Id.* Additionally, a "'plaintiff must sufficiently allege facts to allow the Court to infer that all elements of each of his causes of action exist.'"  *Bryant v. Wash. Mut. Bank*, 524 F. Supp. 2d 753, 756 (E.D. Va. 2007).  While the Court primarily relies on the allegations in the Complaint in ruling on a Rule 12(b)(6) motion, the Court may "look to evidence beyond the pleadings when the Plaintiff fails to introduce a pertinent document as part of the Complaint."  *Levinson v. Massachusetts Mut. Life Ins. Co.*, 2006 U.S. Dist. LEXIS 83397, *13 (E.D. Va. 2006); *Hessek v. N. Am. Mortg. Ins. Servs.,* 2003 U.S. Dist. LEXIS 27361, *8 (E.D. Va. 2003).  Documents that may be considered include:  "public documents, such as those used to establish ownership or proper zoning."  *Hessek*, 2003 U.S. Dist. LEXIS 27361 at *8.

## IV.    ARGUMENT

### A.    BRENT YESSIN IS A MANAGER OF GPP WITH AUTHORITY EQUAL TO OR GREATER THAN THAT OF MRS. YESSIN AND MR. WEISS

#### a.  GPP is a Florida Limited Liability Company governed by the Florida Limited Liability Company Act.

Plaintiffs concede that "GPP is a Limited Liability Company, organized and existing under the laws of the State of Florida."  Compl. ¶ 5.  "In general, the internal affairs of a corporation are governed by the law of the state of incorporation."  *Williams v. The 5300 Columbia Pike Corp.*, 891 F. Supp. 1169, 1182 (E.D. Va. 1995) (citation omitted), *aff'd*, 103 F.3d 122 (4th Cir. 1996); *Int'l Bancorp, L.L.C. v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco*, 192 F.Supp.2d 467, 477 (E.D. Va. 2002), *aff'd*, 329 F.3d 359 (4th Cir. 2003).  Thus, Florida law and the Florida Limited Liability

Company Act ("FLLCA"), Fla. Stat. Ann. §§ 608.401 *et seq.* (2009) governs Mr. Yessin's authority over GPP's assets and access to GPP's computers, as well as Mrs. Yessin's authority to bring this action in the name of the Company.  *C.f. In re:  Audubon Quartet, Inc.*, 285 B.R. 250, 254 (W.D. Va. 2002)("Management power is governed by state law.").  While the FLLCA authorizes the members of a limited liability company to enter into a formal operating agreements to govern the company's affairs and the relationship among members, Plaintiffs do not plead that such an agreement was ever entered into by the members of GPP, nor attach one to the Complaint.  Fla. Stat. Ann. § 608.423 (2009).[1]  As a result of this omission in the pleading, this Court's analysis of the rights and duties existing among the members, managers and the company must be governed by the Articles of Organization on file with the Florida Department of State, the FLLCA, and other Florida statutes, as well as applicable decisional law.  *See Kertesz v. The Spa Floral, LLC.*, 994 So. 2d 473, 475 n. 1 (Fla. Dis. Ct. App. 2008) (noting that in the absence of Articles of Organization or an operating agreement, the Court must analyze the claims of appellant under the FLLCA, Florida statutory law, and applicable decisional law).

> **b.  Mr. Yessin is listed as a manger of GPP in the Articles of Organization and the Annual Reports, and must be considered a manager under the FLLCA.**

Mr. Yessin is a manager of GPP with authority over GPP's operations equal to that of Mrs. Yessin or Mr. Weiss.  At the formation of GPP, Articles of Organization were filed with the Florida Department of State by the Company's members, which stated that GPP would be run as a "manager-managed" limited liability company and which

---

[1] As discussed infra, an Operating Agreement was executed by Mr. Yessin after he had loaned the Company $150,000, which named him as the sole manager, but that agreement is not mentioned in the Complaint and thus, Defendant does not rely upon it in support of his Motion to Dismiss.

listed Mr. Yessin, Mrs. Yessin and Mr. Weiss as the initial managers.  Exh. 5.  As a result

of this filing, GPP *must* be considered a manager-managed company under the language

of the FLLCA, unless and until the articles of incorporation are formally amended.  *See*

Fla. Stat. Ann. § 608.422(3) (2009) ("If the articles of organization …provide for the

management of the limited liability company by a manager or managers, the management

of the limited liability company *shall* be vested in a manager or managers and the limited

liability company *shall* be a manager-managed company.")(emphasis added).  Further,

GPP has filed Annual Reports with the Florida Department of State since 2008.  Each of

these Annual Reports lists Mr. Yessin as GPP's manger.  Exh. 4.

        While Plaintiffs' Complaint alleges that Mr. Yessin has no control or decision

making authority over GPP, this allegation is contradicted by the FLLCA, and can be

rejected by this Court as a misstatement of the law.  *See Levinson v. Massachusetts Mut.*

*Life Ins. Co.,* 2006 U.S. Dist. LEXIS 83397, *11 (E.D. Va. Nov. 9, 2006)("the court need

not assume the truth of legal conclusions couched as factual allegations.")(citing *Papason*

*v. Allain*, 478 U.S. 265, 286 (1986)).  The FLLCA provides that in a manager-managed

company, "unless otherwise provided in its articles of organization or operating

agreement, . . .  [e]ach manager has ***equal rights*** in the management and conduct of the

limited liability company's business."  Fla. Stat. Ann. § 608.422(4)(a) (2009) (emphasis

added).  Further, "[a]ny matter relating to the business of the limited liability company

may be exclusively decided by the manager or, if there is more than one manager, by a

majority of the managers."  *Id.* at 4(b).  Looking to the provisions of the Articles of

Organization, no language limits or adjusts Mr. Yessin's rights as a manager.  Because of

this, the FLLCA dictates that Mr. Yessin's decision making authority is equal to that of

Mrs. Yessin and Mr. Weiss.

**B.      COUNTS I AND II SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO PLEAD UNAUTHORIZED ACCESS OR DAMAGE OR LOSS.**

   **a.   Plaintiffs have failed to plead facts sufficient to support their claims for unauthorized access under the Federal Computer Fraud and Abuse Act.**

In Counts I and II of the Complaint, Plaintiffs allege that Mr. Yessin violated 18 U.S.C. § 1030(a)(2)(C) and (a)(4) of the Federal Computer Fraud and Abuse Act ("CFAA").  The CFAA is "a statute that is generally intended to deter computer hackers." *A.V. v. iParadigms, LLC*, 562 F.3d 630, 645 (4th Cir. 2009).   It has been held to "only appl[y] to a situation 'where an outsider, or someone without authorization, accesses a computer.'" *State Analysis, Inc. v. American Financial Services Assoc.*, 621 F. Supp. 2d 309, 315 (E.D. Va. 2009) (citing *In re: AOL, Inc. Version 5.0 Software Litig.*, 168 F. Supp. 2d 1359, 1370 (S.D. Fla. 2001)).  Mr. Yessin's alleged conduct does not come close to approaching that of a computer hacker and, as a manager of GPP, he was not an outsider, but rather a manager who has full authority to access and utilize all GPP property.  Thus, Plaintiffs have failed to state a claim against Mr. Yessin for violation of the CFAA.

Plaintiffs' assertion that Mr. Yessin violated subsections (a)(2)(C) and (a)(4) of the CFAA, 18 U.S.C. § 1030 (2009), can only be viable if Mr. Yessin "intentionally access[ed] a computer without authorization or exceed[ed] authorized access," and thereby obtained "information" from GPP's computer.  Plainly, by the authority granted to Mr. Yessin as a manager of GPP, Mr. Yessin was authorized to gain access to and obtain information contained in the GPP computer system database.  The FLLCA states

that "[a]ll property originally contributed to the limited liability company or subsequently acquired by a limited liability company purchase or otherwise *is limited liability company property*." Fla. Stat. Ann. § 608.425 (2009)(emphasis added). Plaintiffs concede that Mr. Yessin only accessed company property in the Complaint when they state that he "accessed ***GPP's*** property, including the GPP computer, email system and computer network." Compl. ¶ 32 (emphasis added). Mr. Yessin is a manager with equal rights in the management and conduct of GPP's business, whose authority goes so far as to include the right to "sign and deliver any instrument transferring or affecting the company's interest in real property." Thus, Mr. Yessin has authority to access the Company's computer data under Fla. Stat. Ann. § 608.4235 (2009), and his conduct does not fit within the "without authorization" element of the CFAA.

Further, Plaintiffs fail to allege any facts indicating that Mr. Yessin exceeded his authorized access. Under the CFAA, "exceeds authorized access" means to "access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled to obtain or alter." 18 U.S.C. § 1030(e)(6) (2009). Before a person may "exceed authorized access," boundaries to that authorization must be in place. GPP does not have, and Plaintiffs do not allege that GPP has any formal policies limiting a manager's access to company property or computer systems. In effect, the Company operates on a policy of unlimited access. Once a member or manager is granted unlimited access, it cannot later be alleged that such access has been exceeded. *See SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593 (E.D. Va. 2005) (granting defendants' motion to dismiss after finding that they could not

be considered to have "exceeded their authorized" access once validly given access to the server).

As noted above, Mr. Yessin was a managing member of GPP with full authority to access to all GPP property.  As Mr. Yessin's access was not subject to any limitations through express company policies or procedures, he cannot be considered to have exceeded his unlimited access in violation of the CFAA, nor can he be considered to have accessed information in the Company's computer that he was not entitled to obtain. Indeed, in using GPP's computer network to email her divorce lawyer, Mrs. Yessin took the risk that her communications would not remain private.  The issue of privacy, and the issue of access are two different things.  While an employee may expect privacy conducting a conversation in her office with the door closed, that does not mean that her employer does not have authority to access her office at all times.  Thus, the employer is free to walk into the office at any time, just as a manager of a Florida Limited Liability Company is entitled to access data residing on the Company's computers.  The same is true with passwords.  The employer is free to access passwords residing on the Company's computer.  Thus, the fact that the risk of disclosure Mrs. Yessin took in using the GPP email address to communicate with her lawyer came to fruition does not make Mr. Yessin's conduct "unauthorized."  It simply means that Mrs. Yessin used poor judgment in conducting personal business through the Company's email system.  This Court should, therefore, dismiss Plaintiffs' claims for violation of 18 U.S.C. § 1030(a)(2)(C) and (a)(4).

### b.  Plaintiffs have failed to allege facts showing damage or loss.

The CFAA authorizes a civil action only by one "who suffers damage or loss by

reason of a violation of this section . . . against the violator to obtain compensatory

damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).

Plaintiff alleges in conclusory fashion that GPP has incurred "losses including the

cost of responding to Defendant's individual and/or collective offenses, conducting

damage assessments, restoring the data, program system and/or information to its

condition prior to Defendants' offenses, lost revenue and interruption of service."

Compl. ¶ 46. Mrs. Yessin makes essentially the same allegations, but adds that she

supposedly incurred "losses in her bargaining position in the divorce proceedings against

Defendant." *Id.*, ¶ 47. Notwithstanding Plaintiffs' conclusory allegations, the only facts

that Plaintiffs have asserted in support of that loss theory is that Mr. Yessin allegedly

"surveilled [Mrs. Yessin's] business and personal documents and communications,

including very sensitive, privileged communications with her counsel regarding her

strategy in her impending divorce proceedings with Defendant." Compl. ¶ 16 (emphasis

added). Once Mrs. Yessin suspected the alleged surveillance, she "changed her

password." Compl. ¶ 18. Those allegations comprise the full factual basis for Plaintiffs'

damage and loss claim. Plaintiffs do not allege that any data was altered or destroyed,

nor do they allege facts showing that there was any actual interruption service or

interruption of GPP's computers. There is no allegation as to any amount actually paid

by Mrs. Yessin or GPP to a computer consultant to investigate the integrity of GPP's

computers. Thus, Plaintiffs have failed to allege a factual basis for the $5,000

jurisdictional amount.

"A civil action under the CFAA may only be brought if it involves a loss

aggregating at least $5,000 in value." *The Continental Group, Inc. v. KW Property*

*Management, LLC*, 622 F. Supp. 2d 1357, 1370 (S.D. Fla. 2009).  "Thus, a plaintiff must

show 'damage' or 'loss' of at least $5,000."  *Id.*  The CFAA defines loss as "any

reasonable loss to any victim, including the cost of responding to an offense, conducting

a damage assessment, and restoring the data, program, system, or information to its

condition prior to the offense *and* any revenue lost, cost incurred, or other consequential

damage incurred *because of interruption of service*."  18 U.S.C. § 1030(e)(11) (emphasis

added).  Under the plain language of the statute, to be a recoverable "loss," the loss "must

be [the] result of 'interruption of service.'"  *Id.* at 1371; *see Alstyne v. Electronic*

*Scriptorium, Ltd.*, 560 F.3d 199, 204 (4th Cir. 2009)("'When interpreting statutes, we start

with the plain language.'")(quoting *U.S. Dept. of Labor v. N.C. Growers Ass'n*, 377 F.3d

345, 350 (4th Cir. 2004)).  Explaining its construction of the statute, the Court in *The*

*Continental Group,* explained:

> If loss could be any reasonable cost without any interruption of
> service, then why would there even be a second half to the definition that
> limits some costs to an interruption of service.  Rather, the better reading
> (though reasonable minds surely can differ until the Court of Appeals
> decides the issue) appears to be all 'loss' must be the result of an
> interruption of service.  The conclusion is supported by the legislative
> intent in the CFAA, a criminal statute, to address interruption of service
> and damage to protected computers.

622 F. Supp. 2d at 1371.  Because Plaintiffs have failed to allege a factual basis for any

loss, much less GPP's interruption of service, Plaintiffs have failed to meet the CFAA's

jurisdictional amount.

While Plaintiffs assert that they are "entitled to recover economic damages,"

(Compl. ¶ 58), they have also failed to allege facts showing that they incurred any

"damage" as the term is defined by the CFAA.  "The term 'damage' is defined as 'any

impairment to the integrity or availability of data, a program, a system or information.'"

*Id.* (quoting 18 U.S.C. § 1030(e)(8). The plain language of the statute requires "'some

alteration of or diminution to the integrity, stability, or accessibility of the computer data

itself' to be damage under the CFAA." *The Continental Group, Inc.*, 622 F. Supp. 2d at

1371. Thus, because Plaintiffs have failed to allege facts showing that Mr. Yessin caused

any data to be impaired -- mere surveillance of data will not support a damage claim --

they have failed to satisfy the jurisdictional amount for a CFAA claim.

<blockquote>

**C.     COUNTS VI AND VII SHOULD BE DISMISSED BECAUSE
PLAINTIFFS HAVE FAILED TO PLEAD FACTS SUFFICIENT TO
SUPPORT THEIR CLAIMS FOR VIOLATION OF THE
ELECTRONIC COMMUNICATIONS PRIVACY ACT.**

</blockquote>

In Counts VI and VII of the Complaint, Plaintiffs allege that Mr. Yessin violated

Title II of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2701 *et*

*seq.* (2009). Similar to the CFAA, in order to establish a violation of the ECPA,

Plaintiffs must allege and prove unauthorized access or access which exceeds

authorization. 18 U.S.C. § 2701. These claims fail for the same reason that Plaintiffs'

claims under § 1030(a)(2)(C) and (a)(4) of the CFAA fail – Mr. Yessin was authorized to

access the GPP computer system. *See State Analysis, Inc.*, 621 F. Supp. 2d at 318 (where

it is undisputed that defendant "was contractually entitled to see all of the information it

is alleged to have accessed," it cannot be liable under the ECPA).

<blockquote>

**D.     COUNTS XII AND XIII SHOULD BE DISMISSED BECAUSE
PLAINTIFFS HAVE FAILED TO PLEAD FACTS SUFFICIENT TO
SUPPORT THEIR CLAIMS FOR VIOLATION OF VA. CODE §
18.2-152.3, 152.5 AND 152.12.**

</blockquote>

In Counts XII and XIII, Plaintiffs assert Mr. Yessin violated the Virginia

Computer Crimes Act ("VCCA"), Va. Code §§ 18.2-152.3, 152.5 and 152.12. The

elements necessary to show a violation of the VCCA are nearly identical to those

necessary to state a claim under the FCCA and the ECPA.  To state a claim, Plaintiffs must allege that Mr. Yessin (1) used "a computer or computer network, (2) without authority, (3) intending to obtain, embezzle, or convert the property of another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Circuit 2008) (citing Va. Code Ann. § 18.2-152.3).  Similarly, to establish a violation of § 18.2-152.5, Plaintiffs must allege facts showing that Mr. Yessin used a computer to "intentionally examine[,] without authority[,] any employment, salary, credit, or any other financial or identifying information…relating to any other person."[2]

Plaintiffs' claims under Va. Code Ann. § 18.2-152.3 and 152.5 fail for the same reason as their claims under the CFAA and ECPA fail -- Mr. Yessin was authorized to access the GPP computer system and the information it contained.  Moreover, there is no allegation that Mr. Yessin "obtained, embezzled, or converted" Mrs. Yessin's property or GPP property to his own.  Instead, all that is alleged is that Mr. Yessin surveilled the emails residing on GPP's computer.  Finally, notwithstanding Mr. Yessin's authority as a manager to view Mrs. Yessin's employment information, Mrs. Yessin offers no facts warranting even a slight inference that Mr. Yessin in fact viewed her employment or other financial information.  For these reasons, Plaintiffs claims under Counts XII and XIII should be dismissed.

### E.   COUNT XIV SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO PLEAD FACTS SUFFICIENT TO SUPPORT A CLAIM OF TRESPASS TO CHATTELS.

In Count XIV of the Complaint, Plaintiffs assert that Mr. Yessin's access to the GPP computer systems constitutes trespass to chattel under the common law of Virginia.

---

[2] Va. Code Ann. § 18.2-152.12 authorizes Plaintiffs to bring civil suit if damaged by a violation of §18.2-152.3 or 152.5.

However, that claim must fail, because (i) Mr. Yessin had authority to access GPP property as a managing member of the company, and (ii) Plaintiffs' do not allege damage to the *actual chattel*.

"Trespass to chattels occurs when a party 'intentionally uses or intermeddles with personal property in rightful possession of another without authorization.'" *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 621 (E.D. Va. 2005) (citing *America Online v. IMS*, 24 F. Supp. 2d 548, 550 (E.D. Va. 1998). "If the chattel is impaired as to its value, condition, or quality, the trespassor is liable to the possessor of the chattel." *Id.* As stated above, Mr. Yessin was a managing member of GPP when the alleged trespass occurred. Under the FLLCA, Mr. Yessin had equal authority to access data stored on GPP's computers, and in so doing, cannot be considered to have used or intermeddled with the personal property of another without authorization. Rather, Mr. Yessin was expressly authorized to use and access the GPP computer systems as a managing member of the company.

Further, Plaintiffs' also fail to allege any damage to the chattel. An action for trespass to chattels may only stand if the *chattel* "is impaired as to its value, condition, or quality." *Id.* Plaintiffs' allege only that they have been damaged personally by the trespass, but fail to allege that the actual GPP computer, email system, and computer network have been impaired. Additionally, Mrs. Yessin's claim that her husband's access to her e-mail has deprived her of the legitimate use of the information contained therein does not constitute a valid claim of damage under the common law tort of trespass to chattel. *See SecureInfo Corp.*, 387 F. Supp. 2d at 621 (finding that although the plaintiff alleged that the defendant's access to plaintiff's proprietary information

damaged plaintiff by affecting its exclusive right to possession, contributing to the loss of

actual and potential customers and goodwill, injuring its reputation, and causing

diminution in the value of the proprietary data, plaintiff failed to allege that the *materials*

taken were damaged or diminished in value and therefore had failed to state a claim upon

which relief could be granted)(emphasis added).

Because Plaintiffs' have failed to allege the facts sufficient to rebut the evidence

of Mr. Yessin's management position with GPP or his right to access and control GPP

property, and they have failed to allege actual damage to the computer systems accessed

by him, Plaintiff's claim for trespass to chattel should be dismissed.

## F.   PLAINTIFFS HAVE FAILED TO PLEAD FACTS SUFFICIENT TO SUPPORT THEIR CLAIMS FOR VIOLATION OF THE FEDERAL WIRETAP ACT.

In Counts III, IV, and V, Plaintiffs' claim that Mr. Yessin violated Sections

2511(1)(a), (c) and (d) of the Federal Wiretapping Act ("FWA"), 18 U.S.C. § 2511 *et*

*seq.* (2009).  Plaintiffs further allege that Mr.  Yessin violated 18 U.S.C. § 2520, although

this statute only authorizes Plaintiffs to bring suit if damages under § 2511 occur.  The

FWA provides a civil cause of action against "any person who – (a) intentionally

intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to

intercept, an wire, oral, or electronic communication;…(c) intentionally discloses, or

endeavors to disclose, to any other person, the contents of any [intercepted] wire, oral, or

electronic communication…; or (d) intentionally uses, or endeavors to use, the contents

of any [intercepted] wire, oral, or electronic communication."  18 U.S.C. § 2511(1).

Under this definition, Plaintiffs' claims under the FWA must fail because Plaintiffs do

not allege facts supporting the contention that Mr. Yessin "intercepted" any electronic

communications during their transmission.  Rather, Plaintiffs merely allege that Mr.

Yessin accessed previously transmitted communications stored in GPP's computer.

The term "intercept" is defined under the FWA as "the aural or other acquisition

of the contents of any wire, electronic, or oral communication through the use of any

electronic, mechanical, or other device."  18 U.S.C. § 2510(4).  "Electronic

communication" is defined under the FWA as "any transfer of signs, signals, writing,

images, sounds, data or intelligence of any nature…transmitted in whole or in party by a

wire, radio, etc…"  18 U.S.C. § 2510(12).  "Thus, by inserting the definition of

'electronic communication' into the definition of 'intercept,' 'intercept' is defined as the

'acquisition' of the contents of any 'transfer' of information from sender or recipient."

*Fraser v. Nationwide Mutual Insurance Co.*, 135 F. Supp. 2d 623, 634 (E.D. Pa. 2001),

*aff'd in part,* 352 F.3d 107 (3d Cir. 2003), *and remanded in part to* 334 F. Supp. 2d 755

(E.D. Pa. 2004).  As such, under the terms of the statute, the acquisition "must be during

the transfer, or during the course of the transmission."  *Id.*, *see also United States v. Turk*,

526 F.2d 654 (5th Cir. 1976); *Steve Jackson Games, Inc. v. United States Secret Service*,

36 F.3d 457 (5th Cir. 1994); *United States of America v. Simons*, 29 F. Supp. 2d 324

(E.D. Va. 1998)(citing *Steve Jackson Games*  and explaining that the government did not

need a warrant to obtain Defendant's e-mail as required by the FWA because nothing in

the record indicated that that the e-mail was obtained *while it was being*

*transferred*)(emphasis added), *aff'd in part*, 206 F.3d 392 (4th Cir. 2000), *and remanded*

*in part to* 107 F. Supp. 2d 703 (E.D. Va. 200); *United States v. Meriweather*, 917 F.2d

955, 960 (6th Cir. 1990)("Congress contemplated dealing only with transmissions which

were unlawfully intercepted"); *United States v. Reyes*, 922 F. Supp. 818, 836 (S.D.N.Y.

1996)("[t]he acquisition of the data [must] be simultaneous with the original transmission of the data").  Additionally, this definition is "consistent with the common meaning of intercept[,]…[which is] to stop, seize, or interrupt progress or course before arrival."  *Id.* (citation omitted).

Plaintiffs have therefore failed to allege facts showing that Mr. Yessin "intercepted" or "acquired" Mrs. Yessin's e-mail during the course of the email's transmission.[3]  Rather, Plaintiffs merely allege that Mr. Yessin, utilizing Mrs. Yessin's log-in and password, retrieved e-mails that had already been delivered to and stored in GPP computer system.  This alleged conduct is not an "interception," as required by the provisions of 18 U.S.C. § 2511(1).  Because Plaintiffs' fail to allege that any information Mr. Yessin acquired, disclosed or used was "intercepted" during transmission as required for a violation of the FWA, Counts III, IV, and V of the Complaint should be dismissed.

G.     **PLAINTIFFS HAVE FAILED TO PLEAD FACTS SUFFICIENT TO SUPPORT THEIR CLAIMS FOR VIOLATION OF THE VIRGINIA WIRETAP STATUTE.**

In counts VIII, IX, X and XI, Plaintiffs assert Mr. Yessin violated Va. Code §

---

[3] Plaintiffs assertion of this claim not only reveals a misapprehension of the law, but also complete ignorance as to how email is transmitted through the internet.  One commentator has noted that the task of intercepting email is daunting, because when an email is sent, the message is broken down into packets. After the message is broken up into packets, the sending computer determines which pathway on the internet is the least congested and sends each packet down those routes.  *See* A. Cohen and D. Lender, *Electronic Discovery:  Law and Practice,* § 7.03(A), pp. 7-9 to 10.  As explained by the authors:

> To illustrate the difficulty involved in intercepting an email in transit imagine the following situation:  one hundred pieces of a jigsaw puzzle are given to one hundred carriers in an apartment in New York City with each person instructed to bring his piece of the puzzle to a certain apartment in Los Angeles.  The couriers are instructed to take any path they choose in their trip to Los Angeles, but may not take a direct flight and must make use of multiple forms of transportation during the journey.  Additionally, the couriers are instructed that they are forbidden to follow one another or to travel in groups and are instructed they must make a random number of periodic steps during the trip and change the direction in which they travel.

*Id.* at pp. 7-10 to 11.

19.2-62, the Virginia Wiretap Statute ("VWS"). The elements necessary to show a

violation of the VWS are nearly identical to those necessary to state a claim under the

FWA. Specifically, Plaintiffs must allege and prove that Mr. Yessin intercepted, used, or

disclosed the contents of an "intercepted" electronic or wire communication. Va. Code

Ann. § 19.2-62(A) (2009). The definitions of "intercept" and "electronic

communication" in the VWS mirror the definitions of those same terms in the FWA. As

a result, it must be concluded that the intent behind the statute and the interpretation of

the term "intercept" are meant to mirror one another. Further, "the language of the

statute has a definite and precise meaning, expressed in clear and concise terms, so that

the sense is manifest, [the Court is] required to adopt the sense which it naturally

presents." *Miller v. Commonwealth*, 2 S.E.2d 343, 347 (Va. 1939). Combining the

analysis of the FWA above with the definite and precise meanings of the terms

"intercept" and "transfer," it is clear that a violation of the VWA may only occur if the

acquisition of the wire or electronic communication happens during the transfer, or

during the course of the transmission.

　　　As stated previously, Plaintiffs' have failed to allege that Mr. Yessin intercepted,

used or disclosed the contents of a wire or electronic transfer during the course of its

transmission. Rather, Plaintiffs have only alleged that Mr. Yessin used Mrs. Yessin's

login and password to gain access to emails that had previously been delivered. Because

Plaintiffs fail to allege Mr. Yessin has intercepted any communication during its

transmission, or obtained and used the contents of a communication intercepted during its

transmission, Plaintiffs claims under the VWA must fail. Accordingly, the Court should

dismiss Counts VIII, IX, X and XI of the Complaint.

**H.     MRS. YESSIN LACKS STANDING TO BRING SUIT IN THE NAME OF GPP.**

Mrs. Yessin brings this suit directly in the Company's name, Global Policy Partners, against one of the other member-managers of the company, but she fails to assert the legal basis for taking such action.  At most, Mrs. Yessin alleges that she is one of the Company's three managers; the other named manager being Weiss.  She fails to disclose in her Complaint that Mr. Yessin is a manager of the Company, and she fails to disclose that when she filed her Complaint, the official records of the Florida Department of State listed Mr. Yessin as GPP's sole manager.

Even taking Mrs. Yessin's allegations as true, she has failed to set forth a basis to establish that she has the authority to pursue this claim in the Company's name.  While she gives herself the title of Chief Executive Officer and Principal, those terms have no meaning under the FLLCA, and are not found in any documents filed with the Florida Department of State.  Mrs. Yessin concedes that at least two managers are required to agree in order to act, but fails to set forth any factual allegation that a meeting of the managers took place, a quorum was present, and a vote taken to pursue this action against Mr. Yessin.  Given Mrs. Yessin's clear conflict of interest, she plainly could not participate in the vote to pursue legal action by the company against her husband.

The Florida Limited Liability Company Act vests in the mangers exclusive responsibility for all "matters relating to the business of the limited liability company." Fla. Stat. § 608.422(3) and (4)(b).  While the Act provides that action requiring the consent of the managers may be taken without a meeting, (*Id.* at § 608.422(9)), if there is no meeting, then the action must be approved by unanimous writing consent.  *Id.* at § 608.4231(6).  Otherwise, a meeting must be duly noticed and held.  *Id.*

While discussing an entirely different situation, the Court in *In re Audubon Quartet, Inc.*, 285 B.R. at 257, explained the nearly universal requirement for a meeting of a corporation's governing body:

> The rationale is that each member of the corporation body has the right of consultation with the others, and has the right to be heard upon all questions considered, and it is presumed that if the absent members had been present they might have dissented, and their arguments might have convinced the majority of the unwisdom of their proposed action and thus have produced a different result.

(quoting *Stone v. American Lacquer Solvents Co.*, 345 A.2d 174, 178 (Pa. 1975)(citing *Holcombe v. Trenton White City Co.*, 82 A. 618 (N.J. App. 1912), *aff'd* 91 A. 1069 (N.J. 1913)).  No meeting of the managers is alleged to have taken place, and of course, none ever took place.

While no Florida Court appears to have addressed the issue raised here in a reported decision, namely, whether a company insider may institute suit against another corporate insider  in the name of the company directly, as opposed to bringing a derivative suit – it is generally well accepted that the question is to be answered in the negative.  *Fanchon & Marco, Inc. v. Paramount Pictures, Inc.*, 202 F.2d 731 (2nd Cir. 1953); *Sterling Indus., Inc. v. Ball Bearing Pen Corp.*, 84 N.E.2d 790 (N.Y. 1949); *Seifert v. Dunnatic Indus., Inc.*, 197 A.2d 454 (Pa. 1964); *Anmaco, Inc. v. Bohlken*, 13 Cal. App. 4th 891, 16 Cal. Rptr. 2d 675 (Cal. App. 1993).  Notwithstanding that these cases deal with corporations, the principle is equally applicable to a manager run limited liability company.

 In answering the question raised above in the negative, the courts have recognized that the "business of a corporation shall be managed by its board of directors, [which] cannot be circumvented."  *Sterling Indus., Inc.*, 84 N.E.2d at 794; *see Investment*

*Properties Int'l, Ltd. v. I.O.S., Ltd*, 1971 U.S. Dist. LEXIS 13657 *18 (S.D. N.Y. 1971)("lawsuits outside the ordinary course of corporate business (and perhaps others as well) may not be commenced in the absence of specific authority from the board of directors, particularly in circumstances where the board is opposed to or deadlocked on the question of litigating.").  By bringing this action in the name of GPP, without manager approval in accordance with the FLLCA, Mrs. Yessin has circumvented the managers' authority.  It is not enough to say that Mrs. Yessin and Mr. Weiss can act as a majority.  Basic corporate law requires duly noticed meetings be held, where dissenting voices can be heard in an effort to change the minds of one or more of the other managers.  No such meeting took place before Mrs. Yessin took the extraordinary action of bringing a lawsuit against one of the company's managers, and the sole source of the company's operating funds.  If Mrs. Yessin could not get the board of managers to act, then she could have brought a derivative action.

However, too permit Mrs. Yessin to bring this lawsuit in the name of GPP, without the board of managers' approval or authorization is to, in effect, allow her to take over the company.  This result is even more anomalous given the fact that Mrs. Yessin alone has provided the only money to fund the company's operations ($150,000), which she is now using through institution of this suit in the Company's name to pay her lawyers and the costs associated with this action.

## I.    A STAY OF PROCEEDINGS IS APPROPRIATE SHOULD THIS MOTION TO DISMISS BE DENIED

Should this Court decide that issues over the status of the managers for GPP is undecided to the extent necessary for this Court to rule on this motion or the merits of this case, then Defendant respectfully requests that this Court stay this action pending

resolution of the Florida Declaratory Judgment Action to save judicial economy and

prevent the unnecessary duplication of costs and expenses.  *See J.W. Rayder v. Ahtna*

*Governmental Services Corp.*, No. 1:05cv1251, 2006 U.S. Dist. LEXIS 8660, at *1 (E.D.

Va. February 13, 2006)(granting Defendant's motion to temporarily stay the case pending

the outcome of a declaratory judgment action because the law of Alaska would likely

govern the dispute, a party to the dispute was an Alaska corporation and both actions

were in the beginning stages of litigation).

In support of his suit for declaratory relief, Mr. Yessin asserts that he caused GPP

to be incorporated as a limited liability company under Florida law in July 2007.  Exh. 3,

¶ 7.  He then provided working capital for the Company.  GPP's initial articles of

organization provided that it would be a manager-managed company, and that Mr.

Yessin, Mrs. Yessin and Weiss would be the initial managers.  *Id.*, ¶ 9.  Mr. Yessin not

only provided initial working capital to the Company, but he also loaned the Company

$100,000 and $50,000 to fund its operations  *Id.*, ¶¶ 10-11.  He also advanced the

Company additional funds to pay GPP's expenses.  *Id.*, ¶ 12.  Ultimately, an operating

agreement was prepared and agreed to by all members, which was signed by Mr. Yessin

and which listed him as the sole manager of the Company.

The dispute over who is a manager of GPP is distinctly a matter to be decided by

Florida law and the Florida State Court is in the best position to apply its laws to

determine the force and effect of the operating agreement.  Should Mr. Yessin prevail on

his declaratory judgment action, then it will be conclusively established that Mrs. Yessin

has no authority to bring this action in the name of GPP, and that her other claims lack

merit.  Even if the State Court finds otherwise, its ruling on the status of the managers

may well affect the issues to be litigated in this case.  Accordingly, this Court should stay this action pending resolution of the Florida Declaratory Judgment Action.

## **CONCLUSION**

For the reasons stated above, Brent Yessin respectfully requests that the Court dismiss the Complaint against it without leave to amend, along with any additional relief the Court deems necessary and proper, or in the alternative, stay this case pending resolution of the Florida Declaratory Judgment Action.

Respectfully submitted,
BRENT YESSIN

_____/s/_____
Charles M. Sims (VSB No. 35845)
C. Matthew Haynes (VSB No. 77896)
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 E. Byrd Street, Eighth Floor
Richmond, Virginia 23219
(804) 783-2003 Telephone
(804) 783-2294 Facsimile
Email: charles.sims@leclairryan.com
Email: matthew.haynes@leclairryan.com
***Counsel for Defendant Brent Yessin***

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on the 3rd day of September 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to the following:

Bernard J. DiMuro
Stacey Rose Harris
DimuroGinsberg, P.C.
908 King Street, Suite 200
Alexandria, Virginia 22314
*Counsel for Plaintiffs*



_____/s/_____
C. Matthew Haynes (VSB No. 77896)
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 E. Byrd Street, Eighth Floor
Richmond, Virginia 23219
(804) 783-2003 Telephone
(804) 783-2294 Facsimile
Email: matthew.haynes@leclairryan.com
***Counsel for Defendant Brent Yessin***